[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (NO. 110)
On June 16, 1992, plaintiff, Citicorp Mortgage, Inc. (hereinafter "the Mortgagee"), initiated this foreclosure action and filed a complaint against the defendants Arthur J. Lutschaunig (hereinafter "the Mortgagor"), Elizabeth A. Fry and Regent's Park Condominium Association. The facts alleged in the Mortgagee's complaint are as follows.
On July 31, 1987, the Mortgagor executed an adjustable rate note to pay Citicorp Person-to-Person Center of Connecticut, Inc. the principle sum of $375,750.00, together with interest in accordance with the terms contained in the note. In order to secure the note, the Mortgagor mortgaged certain real estate known as Unit 15, 1400 Post Road, Westport, CT Page 7184 Connecticut, to Citicorp Person-to-Person Center of Connecticut, Inc. According to the terms of the note, the Mortgagor became indebted to Citicorp Person-to-Person of Connecticut, Inc. to make 360 monthly installments of principal and interest commencing on September 1, 1987, and each and every month thereafter until August 1, 2017. The note contained an acceleration clause whereby any default in the payment of any installment would render the note immediately due and payable at the option of the holder of the note. Citicorp Person-to-Person Center of Connecticut, Inc. assigned the note to the Mortgagee who is still the holder of the note. The Mortgagor failed to pay the October 1, 1991, installment or any of the installments due thereafter.
The Mortgagee further alleges that defendant Fry may claim an interest in the subject property by virtue of a mortgage in the amount of $7,500.00 dated December 14, 1990. The Mortgagee also alleges that defendant Regent's Park Condominium may claim an interest in the subject property by virtue of a statutory lien for unpaid common expense assessments. The Mortgagee claims that both defendant Fry's and defendant Regent's Park Condominium's interests are subsequent to the Mortgagee's interest.
On August 27, 1992, the Mortgagor filed an answer and special defenses. On November 12, 1992, the Mortgagor filed five revised special defenses. In his first revised special defense, the Mortgagor alleges that the Mortgagee acted in a commercially unreasonable manner by failing to respond to the Mortgagor's offers to transfer title. In his second revised special defense, the Mortgagor alleges that the Mortgagee acted in a commercially unreasonable manner by failing to respond for a period in excess of six months to the Mortgagor's repeated offers to refinance the subject loan to reflect market rates. In his third revised special defense, the Mortgagor alleges that the Mortgagee's failure to respond to the Mortgagor's offers to transfer title constitutes a breach of the obligation to act in good faith. In his fourth revised special defense, the Mortgagor alleges that the mortgagee's failure to respond for a period in excess of six months to the Mortgagor's repeated offers to refinance the subject loan to reflect market rates constitutes a breach of the obligation to act in good faith. In his fifth revised special defense the Mortgagor alleges that the mortgagee acted in a commercially unreasonable manner by refusing to accept the mortgagor's payment of the arrearage at CT Page 7185 current market rates so as to minimize interest and costs.
On February 1, 1993, the Mortgagee filed a motion to strike the Mortgagor's revised special defenses based on two grounds. In its first ground, the Mortgagee claims that the Mortgagor's special defenses fail to show that the Mortgagee has no cause of action. In its second ground, the Mortgagee claims that the Mortgagor's special defenses are not judicially recognized special defenses to a foreclosure action. Accompanying its motion to strike, the Mortgagee filed a supporting memorandum of law. On February 16, 1993, the Mortgagor filed a memorandum of law in opposition to the Mortgagee's motion to strike.
 I
The purpose of a motion to strike "is to test the legal sufficiency of a pleading. Practice Book, 1978, 152. . . ." (Citations omitted.) Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). Moreover, a motion to strike is properly used to challenge the legal sufficiency of any answer or special defense. Practice Book 152(5). All well pleaded facts in a contested pleading are deemed admitted for the purposes of a motion to strike and should be construed in a light most favorable to the nonmoving party. Rowe v. Godou, 209 Conn. 273,278, 550 A.2d 1073 (1988). "`The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them; and if facts provable under the allegations would support. . . a cause of action, the. . . [motion to strike] must fail.'" (Citations omitted.) Ferryman v. Groton, supra, 142. Therefore, the court must construe the defenses "in the manner most favorable to sustaining [their] legal sufficiency." Bouchard v. Peoples Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991). If the facts provable under the allegations would not support valid defenses, the motion to strike must be granted. Alarm Applications Co. v. Simsbury Volunteer Fire Co. 179 Conn. 541, 545, 427 A.2d 752
(1988).
There is currently a split of authority among the judges of the Superior Court regarding the scope of available defenses to a foreclosure action. Historically, the defenses available in a foreclosure action have been limited to payment, discharge, release, satisfaction or invalidity of a lien. Peterson v. Weinstock, 106 Conn. 436, 441, 138 A. 433 (1927), see CT Page 7186 also Hans L. Levi, Inc. v. Kovacs, 5 Conn. L. Rptr. 260, 261. November 4, 1991, Pickett, J.). "However, because foreclosure is equitable, courts have recognized that flexibility is required in certain situations." Hans L. Levi, Inc. v. Kovacs, supra, 261, citing Hamm v. Taylor, 180 Conn. 491, 497,429 A.2d 946 (1980).
Judges of the Superior Court, exercising their equitable powers, have recognized allegations of mistake, accident, fraud, equitable estoppel, CUTPA, laches, breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure and a refusal to agree to a favorable sale to a third party. Citicorp Mortgage, Inc. v. Kerzner, 8 CTLR 229 (January 15, 1993, Curran, J.); Home Savings of America, F.A. v. Chiapetta, 8 CTLR 223 (January 12, 1993, Nigro, J.); Hans L. Levi, Inc. v. Kovacs, supra; Bedford Plaza Ltd. Partnership v. Nakhi, 2 Conn. L. Rptr. 841 (June 8, 1990, Flynn, J.); Essex Savings Bank v. Firmberger, Superior Court, Judicial District of New London, Docket No. 512191 (May 1, 1991).
"An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties." Glotzer v. Keyes, 125 Conn. 227, 231 (1939; Dime Savings Bank v. Peter Wu, et al, Superior Court, 7 CSCR 93
(January 20, 1992, Rush, J.). ". . . [A] trial court in foreclosure proceedings has discretion, to withhold foreclosure or to reduce the amount of the stated indebtedness." Hamm v. Taylor, 190 Conn. 491, 497 (1980).
With the foregoing principles in mind, the court turns to the specific claims of the parties.
In his first revised special defense, the Mortgagor alleges that the Mortgagee acted in a commercially unreasonable manner by failing to respond to the Mortgagor's offers to transfer title in order to minimize interest and costs. In his second revised special defense, the Mortgagor alleges that the Mortgagee acted in a commercially unreasonable manner by failing to respond for a period in excess of six months to the Mortgagor's repeated offers to refinance the subject loan to reflect market rates. In his fifth revised special defense, the Mortgagor claims that the Mortgagee acted in a commercially unreasonable manner by refusing to accept the Mortgagor's CT Page 7187 payment of the arrearage at current market rates so as to minimize interest and costs.
The Mortgagor argues that "even though [his] allegations were `post breach' of the actions giving rise to the foreclosure, and even though [he] would have no right to reinstatement of his loan, the special defense, if proven, constitute[s] at least a partial defense on the issue of damages, i.e., deficiency, in a foreclosure action." (See Mortgagor's memorandum of law in opposition to the Mortgagee's motion to strike, p. 5, citing Bank of Boston Connecticut v. Capitol West Associates Limited Partnership, 7 CSCR 1069 (July 21, 1992, Freed, J.).
In his third revised special defense, the Mortgagor alleges that the Mortgagee's failure to respond to the Mortgagor's offers to transfer so as to minimize interest and costs constitutes a breach of the obligation to act in good faith. In his fourth revised special defense the Mortgagor alleges that the Mortgagee's failure to respond, for a period in excess of six months, to the Mortgagor's repeated offers to refinance the subject loan to reflect market rates constitutes a breach of the obligation to act in good faith.
 "The Connecticut courts have specifically recognized an implied covenant of good faith and fair dealing in a variety of contractual relationships, including leases, insurance contracts, and construction contracts." Sorrillo v. Shotner, 2 CSCR 1095 (1987) (Leuba, J.), citing Magnan, supra. "There is no logical reason why good faith and fair dealing should be excluded from contractual arrangements involving mortgages;" id; and therefore, breach of "a covenant of good faith and fair dealing may be asserted in a foreclosure action. . ." (Citation omitted.) Essex Savings Bank, supra, 3.
Citicorp Mortgage, Inc. v. Kerzner, supra, 230
Accordingly, the plaintiff's motion to strike the first, second, third, fourth and fifth revised special defense is denied. CT Page 7188
SANDRA VILARDI LEHENY, JUDGE